**Fill in this information to identify the case:**

Debtor 1    William A. Spence

Debtor 2    Sontay L. Spence
(Spouse, if filing)

United States Bankruptcy Court for the District of New Jersey

Case number   23-11463 ABA

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?** | **Lakeview Loan Servicing, LLC**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? _____ |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | **M&T Bank**<br>Name | **M&T Bank**<br>Name |
| | **P.O. Box 840**<br>Number        Street | **ATTN: Payment Processing, P.O. Box 1288**<br>Number        Street |
| | **Buffalo, NY 14240-0840**<br>City        State        Zip Code | **Buffalo, NY 14240-1288**<br>City        State        Zip Code |
| | Contact phone | Contact phone |
| | Contact Email | Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes.   Claim number on court claims registry (if known)_____        Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes.   Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor **2984**

---

**7. How much is this claim?** $250,953.04

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

---

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

Nature of property: **410 Snow Fox Lane Egg Harbor Township, NJ 08234**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: **$250,953.04**

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$24,503.96**

Annual Interest Rate (when case was filed) 3.12500%

☒ Fixed
☐ Variable

---

**10. Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

242

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   __03/21/2023__
                            MM / DD / YYYY

__/s/ Denise Carlon Esquire__

                Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | __Denise Carlon__ | | |
| | First name | Middle name | Last name |
| Title | __Bankruptcy Attorney__ | | |
| Company | __KML Law Group, P.C.__ | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | __701 Market Street, Suite 5000__ | | |
| | Number   Street | | |
| | __Philadelphia__ | __PA__ | __19106__ |
| | City | State | ZIP Code |
| Contact Phone | __201-549-2363__ | Email | __dcarlon@kmllawgroup.com__ |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR-9004-1**

KML Law Group, P.C.
By: Denise Carlon Esquire
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-2363
Attorneys for Secured Creditor: Lakeview
Loan Servicing, LLC

In Re:
William A. Spence
Sontay L. Spence
           Debtor

Case No:     <u>23-11463 ABA</u>

Chapter:     <u>13</u>

Judge:

## CERTIFICATION OF SERVICE

1. I Dean Jacobs, :

   ☐ Represent the _____ in the above-captioned matter.

   ☒ am the secretary/paralegal for Denise Carlon, who represents the <u>Secured Creditor</u> in the above captioned matter.

   ☐ am the _____ in the above case and am representing myself.

2. On 03/21/2023, I sent a copy of the following pleadings and/or documents to the parties listed in the chart below:

   - Proof of Claim
   - 410a Payment History
   - Escrow Analysis
   - Loan Docs
   - Certification of Service

3. I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated: 03/21/2023     <u>/S/  Dean Jacobs</u>

| Name and Address of Party Served | Relation of Party to the Case | Mode of Service |
|---|---|---|
| William A. Spence<br>410 Snow Fox Lane<br>Egg Harbor Township, NJ 08234 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other<br>_____<br>(as authorized by the court *) |
| Sontay L. Spence<br>410 Snow Fox Lane<br>Egg Harbor Township, NJ 08234 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other<br>_____<br>(as authorized by the court *) |
| Jeffrey E. Jenkins<br>Jenkins Law Group<br>412 White Horse Pike<br>Audubon, NJ 08106 | Attorney for Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other<br>_____<br>(as authorized by the court *) |

245

| | Chapter 13 Trustee | ☐ Hand-delivered |
| --- | --- | --- |
| Isabel C. Balboa Esq.<br>Chapter 13 Standing Trustee<br>Cherry Tree Corporate Center -<br>535 Route 38 - Suite 580<br>Cherry Hill, NJ 08002 | | ☒ Regular mail |
| | | ☐ Certified mail/RR |
| | | ☐ E-mail |
| | | ☐ Notice of Electronic Filing (NEF) |
| | | ☐ Other<br>_____<br>(as authorized by the court *) |

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case Number: | 23-11463-ABA |
| Debtor 1: | William A. Spence |
| Debtor 2: | Sontay L. Spence |
| Last 4 digits used to Identify | 2984 |
| Creditor: | Lakeview Loan Servicing, LLC |
| Servicer: | M&T Bank |
| Fixed accrual, Daily simple interest or other: | Fixed accrual |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal Balance: | 235103.72 |
| Interest Due: | 7959.25 |
| MIP Amount: | 142.20 |
| Fees, Costs Due: | 1596.58 |
| Escrow deficiency for funds advanced: | 15002.45 |
| Less total funds on hand: | -8851.16 |
| Total Debt: | 250953.04 |

**Part 3: Arrearage as of Date of Petition**

| | |
|---|---|
| Principal & Interest Due: | 12280.68 |
| Prepetition fees due: | 1596.58 |
| Escrow deficiency for funds advanced: | 15002.45 |
| Projected escrow shortage: | 4475.41 |
| Less funds on hand: | -8851.16 |
| Total prepetition arrearage | 24503.96 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & Interest | 1023.39 |
| Monthly Escrow | 1028.12 |
| Private Mortgage Insurance | 142.20 |
| Total Monthly Payment | 2193.71 |
| 1st Post Petition Payment Due | 3/1/2023 |

**Part 5:  Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How funds were applied/Amount Incurred | | | | | Balance after amount received or incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow Balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Beginning Balance | | 0.00 | | | | | | 238,480.74 | | -1,706.10 | 0.00 | 0.00 |
| 12/1/21 | 2,233.16 | | | Contractual Payment Due | 12/1/2021 | 2,233.16 | | | | | | 238,480.74 | | -1,706.10 | 0.00 | 0.00 |
| 12/3/21 | | | | Mortgage Insurance Disbursement | 12/1/2021 | 2,233.16 | | | -146.10 | | | 238,480.74 | | -1,852.20 | 0.00 | 0.00 |
| 12/16/21 | | | 40.94 | Late Charge | 12/1/2021 | 2,233.16 | | | | 40.94 | | 238,480.74 | | -1,852.20 | 40.94 | 0.00 |
| 1/1/22 | 2,233.16 | | | Contractual Payment Due | 12/1/2021 | 4,466.32 | | | | | | 238,480.74 | | -1,852.20 | 40.94 | 0.00 |
| 1/4/22 | | | | Mortgage Insurance Disbursement | 12/1/2021 | 4,466.32 | | | -146.10 | | | 238,480.74 | | -1,998.30 | 40.94 | 0.00 |
| 1/14/22 | | | | County Tax | 12/1/2021 | 4,466.32 | | | -2,411.40 | | | 238,480.74 | | -4,409.70 | 40.94 | 0.00 |
| 1/18/22 | | | 40.94 | Late Charge | 12/1/2021 | 4,466.32 | | | | 40.94 | | 238,480.74 | | -4,409.70 | 81.88 | 0.00 |
| 1/21/22 | | 2,232.05 | | Payment Applied | 12/1/2021 | 2,234.27 | 402.35 | 621.04 | 1,208.66 | | | 238,078.39 | | -3,201.04 | 81.88 | 0.00 |
| 1/27/22 | | | | Insufficient Funds | 12/1/2021 | 4,466.32 | -402.35 | -621.04 | -1,208.66 | | | 238,480.74 | | -4,409.70 | 81.88 | 0.00 |
| 1/27/22 | | | 20.00 | NSF | 1/1/2021 | 4,466.32 | | | | 20.00 | | 238,480.74 | | -4,409.70 | 101.88 | 0.00 |
| 2/1/22 | 2,233.16 | | | Contractual Payment Due | 1/1/2021 | 6,699.48 | | | | | | 238,480.74 | | -4,409.70 | 101.88 | 0.00 |
| 2/4/22 | | | | Mortgage Insurance Disbursement | 1/1/2021 | 6,699.48 | | | -146.10 | | | 238,480.74 | | -4,555.80 | 101.88 | 0.00 |
| 2/16/22 | | | 40.94 | Late Charge | 1/1/2021 | 6,699.48 | | | | 40.94 | | 238,480.74 | | -4,555.80 | 142.82 | 0.00 |
| 2/18/22 | | 4,465.21 | | Payment Applied | 12/1/2021 | 4,467.43 | 402.35 | 621.04 | 1,208.66 | | | 238,078.39 | | -3,347.14 | 142.82 | 0.00 |
| 2/18/22 | | | | Payment Applied | 1/1/2022 | 2,233.16 | 403.39 | 620.00 | 1,209.77 | | | 237,675.00 | | -2,137.37 | 142.82 | 0.00 |
| 2/25/22 | | | 20.00 | NSF | 2/1/2022 | 2,233.16 | | | | 20.00 | | 237,675.00 | | -2,137.37 | 162.82 | 0.00 |
| 2/25/22 | | | | Insufficient Funds | 1/1/2022 | 4,466.32 | -403.39 | -620.00 | -1,209.77 | | | 238,078.39 | | -3,347.14 | 162.82 | 0.00 |
| 2/25/22 | | | | Insufficient Funds | 12/1/2021 | 6,698.48 | -402.35 | -621.04 | -1,208.66 | | | 238,480.74 | | -4,555.80 | 162.82 | 0.00 |
| 2/25/22 | | 4,465.21 | | Payment Applied | 12/1/2021 | 4,466.43 | 402.35 | 621.04 | 1,208.66 | | | 238,078.39 | | -3,347.14 | 162.82 | 0.00 |
| 2/25/22 | | | | Payment Applied | 1/1/2022 | 2,233.16 | 403.39 | 620.00 | 1,209.77 | | | 237,675.00 | | -2,137.37 | 162.82 | 0.00 |
| 3/1/22 | 2,233.16 | | | Contractual Payment Due | 2/1/2022 | 4,466.32 | | | | | | 237,675.00 | | -2,137.37 | 162.82 | 0.00 |
| 3/4/22 | | | | Mortgage Insurance Disbursement | 2/1/2022 | 4,466.32 | | | -146.10 | | | 237,675.00 | | -2,283.47 | 162.82 | 0.00 |
| 3/16/22 | | | 40.94 | Late Charge | 2/1/2022 | 4,466.32 | | | | 40.94 | | 237,675.00 | | -2,283.47 | 203.76 | 0.00 |
| 4/1/22 | 2,233.16 | | | Contractual Payment Due | 2/1/2022 | 6,699.48 | | | | | | 237,675.00 | | -2,283.47 | 203.76 | 0.00 |
| 4/4/22 | | | | Mortgage Insurance Disbursement | 2/1/2022 | 6,699.48 | | | -146.10 | | | 237,675.00 | | -2,429.57 | 203.76 | 0.00 |
| 4/18/22 | | | 40.94 | Late Charge | 2/1/2022 | 6,699.48 | | | | 40.94 | | 237,675.00 | | -2,429.57 | 244.70 | 0.00 |
| 4/22/22 | | 4,446.32 | | Payment Applied | 2/1/2022 | 4,466.32 | 404.44 | 618.95 | 1,209.77 | | 2,213.16 | 237,270.56 | | -1,219.80 | 244.70 | 2,213.16 |
| 4/22/22 | | | | County Tax | 3/1/2022 | 4,466.32 | | | -2,411.39 | | | 237,270.56 | | -3,631.19 | 244.70 | 2,213.16 |
| 4/25/22 | | | | Payment Applied | 3/1/2022 | 2,253.16 | 405.50 | 617.89 | 1,189.77 | | -2,213.16 | 236,865.06 | | -2,441.42 | 244.70 | 0.00 |
| 4/28/22 | | | 20.00 | NSF | 4/1/2022 | 2,253.16 | | | | 20.00 | | 236,865.06 | | -2,441.42 | 264.70 | 0.00 |
| 4/28/22 | | | | Insufficient Funds | 3/1/2022 | 4,466.32 | -405.50 | -617.89 | -1,189.77 | | | 237,270.56 | | -3,631.19 | 264.70 | 0.00 |
| 4/28/22 | | | | Insufficient Funds | 2/1/2022 | 6,699.48 | -404.44 | -618.95 | -1,209.77 | | | 237,675.00 | | -4,840.96 | 264.70 | 0.00 |

| Date | Contractual Payment Amount | Funds Received | Charges | Description | Due Date | Due Amount | Principal | Interest | Escrow | Amount | Principal Balance | Escrow Balance | Fees Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/29/22 | | 4,400.00 | | Payment Applied | | | | | | 2,166.84 | | -3,631.19 | 264.70 | 2,166.66 |
| 5/1/22 | 2,233.16 | | | Contractual Payment Due | | | | | | | 237,270.56 | -3,631.19 | 264.70 | 2,166.66 |
| 5/4/22 | | | | Mortgage Insurance Disbursement | 3/1/2022 | 6,699.48 | | | | -146.10 | 237,270.56 | -3,777.29 | 264.70 | 2,166.66 |
| 5/16/22 | | | 40.94 | Late Charge | 3/1/2022 | 6,699.48 | | | | 40.94 | 237,270.56 | -3,777.29 | 305.64 | 2,166.84 |
| 5/27/22 | | 2,299.48 | | Funds Received | 3/1/2022 | 6,699.48 | | | | 2,299.48 | 237,270.56 | -3,777.29 | 305.64 | 4,466.32 |
| 5/31/22 | | | | Payment Applied | 3/1/2022 | 4,466.32 | 405.50 | 617.89 | 1,209.77 | -4,466.32 | 236,865.06 | -2,567.52 | 305.64 | 0.00 |
| 5/31/22 | | | | Payment Applied | 4/1/2022 | 2,233.16 | 406.55 | 616.84 | 1,209.77 | | 236,458.51 | -1,357.75 | 305.64 | 0.00 |
| 6/1/22 | 2,233.16 | | | Contractual Payment Due | 5/1/2022 | 4,466.32 | | | | | 236,458.51 | -1,357.75 | 305.64 | 0.00 |
| 6/3/22 | | | 20.00 | NSF | 5/1/2022 | 4,466.32 | | | | 20.00 | 236,458.51 | -1,357.75 | 325.64 | 0.00 |
| 6/3/22 | | | | Insufficient Funds | 4/1/2022 | 6,699.48 | -406.55 | -616.84 | -1,209.77 | | 236,865.06 | -2,567.52 | 325.64 | 0.00 |
| 6/3/22 | | | | Insufficient Funds | 3/1/2022 | 8,932.64 | -405.50 | -617.89 | -1,209.77 | 2,166.84 | 237,270.56 | -3,777.29 | 325.64 | 2,166.84 |
| 6/3/22 | | | | Mortgage Insurance Disbursement | 3/1/2022 | 8,932.64 | | | | -142.20 | 237,270.56 | -3,919.49 | 325.64 | 2,166.84 |
| 6/16/22 | | | 40.94 | Late Charge | 3/1/2022 | 8,932.64 | | | | 40.94 | 237,270.56 | -3,919.49 | 366.58 | 2,166.84 |
| 6/21/22 | | | | Principal Payment | 3/1/2022 | 8,932.64 | 2,166.84 | | | -2,166.84 | 235,103.72 | -3,919.49 | 366.58 | 0.00 |
| 7/1/22 | 2,233.16 | | | Contractual Payment Due | | 11,165.80 | | | | | 235,103.72 | -3,919.49 | 366.58 | 0.00 |
| 7/4/22 | | | 20.00 | Property Inspection | | 11,165.80 | | | | 20.00 | 235,103.72 | -3,919.49 | 386.58 | 0.00 |
| 7/5/22 | | | | Mortgage Insurance Disbursement | | 11,165.80 | | | | -142.20 | 235,103.72 | -4,061.69 | 386.58 | 0.00 |
| 8/1/22 | 2,149.76 | | | Contractual Payment Due | | 13,315.56 | | | | | 235,103.72 | -4,061.69 | 386.58 | 0.00 |
| 8/4/22 | | | | Mortgage Insurance Disbursement | | 11,165.80 | | | | -142.20 | 235,103.72 | -4,203.89 | 386.58 | 0.00 |
| 8/4/22 | | | | Hazard Insurance | | 13,315.56 | | | | -2,808.00 | 235,103.72 | -7,011.89 | 386.58 | 0.00 |
| 8/11/22 | | | 425.00 | BK Atty Fees | | 11,165.80 | | | | 425.00 | 235,103.72 | -7,011.89 | 811.58 | 0.00 |
| 8/12/22 | | | 2.40 | BK Cost Service | | 13,315.56 | | | | 2.40 | 235,103.72 | -7,011.89 | 813.98 | 0.00 |
| 8/12/22 | | | 2.40 | BK Cost Service | | 11,165.80 | | | | 2.40 | 235,103.72 | -7,011.89 | 816.38 | 0.00 |
| 8/12/22 | | | 2.40 | BK Cost Service | | 13,315.56 | | | | 2.40 | 235,103.72 | -7,011.89 | 818.78 | 0.00 |
| 8/12/22 | | | 2.40 | BK Cost Service | | 11,165.80 | | | | 2.40 | 235,103.72 | -7,011.89 | 821.18 | 0.00 |
| 8/12/22 | | | 2.40 | BK Cost Service | | 13,315.56 | | | | 2.40 | 235,103.72 | -7,011.89 | 823.58 | 0.00 |
| 8/12/22 | | 1,500.00 | | Funds Received | | 11,165.80 | | | | 1,500.00 | 235,103.72 | -7,011.89 | 823.58 | 1,500.00 |
| 8/15/22 | | | | County Tax | | 13,315.56 | | | | -2,359.75 | 235,103.72 | -9,371.64 | 823.58 | 1,500.00 |
| 8/18/22 | | | 225.00 | BK Atty Fees | | 11,165.80 | | | | 225.00 | 235,103.72 | -9,371.64 | 1,048.58 | 1,500.00 |
| 8/18/22 | | | 20.00 | NSF | | 11,165.80 | | | | 20.00 | 235,103.72 | -9,371.64 | 1,068.58 | 1,500.00 |
| 8/18/22 | | | | Insufficient Funds | | 11,165.80 | | | | -1,500.00 | 235,103.72 | -9,371.64 | 1,068.58 | 0.00 |
| 8/19/22 | | 2,000.00 | | Funds Received | | 11,165.80 | | | | 2,000.00 | 235,103.72 | -9,371.64 | 1,068.58 | 2,000.00 |
| 8/26/22 | | | 500.00 | BK Atty Fees | | 11,165.80 | | | | 500.00 | 235,103.72 | -9,371.64 | 1,568.58 | 2,000.00 |
| 8/29/22 | | | 1.68 | BK Cost Service | | 13,315.56 | | | | 1.68 | 235,103.72 | -9,371.64 | 1,570.26 | 2,000.00 |
| 8/29/22 | | | 1.68 | BK Cost Service | | 11,165.80 | | | | 1.68 | 235,103.72 | -9,371.64 | 1,571.94 | 2,000.00 |
| 8/29/22 | | | 1.68 | BK Cost Service | | 13,315.56 | | | | 1.68 | 235,103.72 | -9,371.64 | 1,573.62 | 2,000.00 |
| 8/29/22 | | | 1.68 | BK Cost Service | | 11,165.80 | | | | 1.68 | 235,103.72 | -9,371.64 | 1,575.30 | 2,000.00 |
| 9/1/22 | 2,149.76 | | | Contractual Payment Due | | 15,465.32 | | | | | 235,103.72 | -9,371.64 | 1,575.30 | 2,000.00 |
| 9/2/22 | | | | Mortgage Insurance Disbursement | | 15,465.32 | | | | -142.20 | 235,103.72 | -9,513.84 | 1,575.30 | 2,000.00 |
| 9/30/22 | | 2,000.00 | | Funds Received | | 15,465.32 | | | | 2,000.00 | 235,103.72 | -9,513.84 | 1,575.30 | 4,000.00 |
| 10/1/22 | 2,149.76 | | | Contractual Payment Due | | 17,615.08 | | | | | 235,103.72 | -9,513.84 | 1,575.30 | 4,000.00 |
| 10/3/22 | | | | Atty Adv. Repymt | | 17,615.08 | | | | -18.72 | 235,103.72 | -9,513.84 | 1,556.58 | 4,000.00 |
| 10/4/22 | | | | Mortgage Insurance Disbursement | | 17,615.08 | | | | -142.20 | 235,103.72 | -9,656.04 | 1,556.58 | 4,000.00 |
| 10/5/22 | | | | Insufficient Funds | | 17,615.08 | | | | -2,000.00 | 235,103.72 | -9,656.04 | 1,556.58 | 2,000.00 |
| 10/6/22 | | | 20.00 | NSF | | 17,615.08 | | | | 20.00 | 235,103.72 | -9,656.04 | 1,576.58 | 2,000.00 |
| 10/12/22 | | 2,233.16 | | Funds Received | | 17,615.08 | | | | 2,233.16 | 235,103.72 | -9,656.04 | 1,576.58 | 4,233.16 |
| 10/21/22 | | | | County Tax | | 17,615.08 | | | | -2,385.58 | 235,103.72 | -12,041.62 | 1,576.58 | 4,233.16 |
| 11/1/22 | 2,149.76 | | | Contractual Payment Due | | 19,764.84 | | | | | 235,103.72 | -12,041.62 | 1,576.58 | 4,233.16 |
| 11/4/22 | | | | Mortgage Insurance Disbursement | | 19,764.84 | | | | -142.20 | 235,103.72 | -12,183.82 | 1,576.58 | 4,233.16 |
| 11/25/22 | | 2,200.00 | | Funds Received | | 19,764.84 | | | | 2,200.00 | 235,103.72 | -12,183.82 | 1,576.58 | 6,433.16 |
| 12/1/22 | 2,149.76 | | | Contractual Payment Due | | 21,914.60 | | | | | 235,103.72 | -12,183.82 | 1,576.58 | 6,433.16 |
| 12/2/22 | | | | Mortgage Insurance Disbursement | | 21,914.60 | | | | -142.20 | 235,103.72 | -12,326.02 | 1,576.58 | 6,433.16 |
| 12/22/22 | | 1,000.00 | | Funds Received | | 21,914.60 | | | | 1,000.00 | 235,103.72 | -12,326.02 | 1,576.58 | 7,433.16 |
| 1/1/23 | 2,474.90 | | | Contractual Payment Due | | 24,389.50 | | | | | 235,103.72 | -12,326.02 | 1,576.58 | 7,433.16 |
| 1/4/23 | | | | Mortgage Insurance Disbursement | | 24,389.50 | | | | -142.20 | 235,103.72 | -12,468.22 | 1,576.58 | 7,433.16 |
| 1/18/23 | | | | County Tax | | 24,389.50 | | | | -2,392.03 | 235,103.72 | -14,860.25 | 1,576.58 | 7,433.16 |
| 1/20/23 | | 1,417.71 | | Funds Received | | 24,389.50 | | | | 1,417.71 | 235,103.72 | -14,860.25 | 1,576.58 | 8,850.87 |
| 1/26/23 | | | 20.00 | NSF | | 24,389.50 | | | | 20.00 | 235,103.72 | -14,860.25 | 1,596.58 | 8,850.87 |
| 1/26/23 | | | | Insufficient Funds | | 24,389.50 | | | | -1,417.71 | 235,103.72 | -14,860.25 | 1,596.58 | 7,433.16 |
| 1/30/23 | | 1,418.00 | | Funds Received | | 24,389.50 | | | | 1,418.00 | 235,103.72 | -14,860.25 | 1,596.58 | 8,851.16 |
| 2/1/23 | 2,474.90 | | | Contractual Payment Due | | 26,864.40 | | | | | 235,103.72 | -14,860.25 | 1,596.58 | 8,851.16 |

| 2/3/23 | | | Mortgage Insurance Disbursement | 2/1/2022 | -26,894.20 | -152.10 | 295,105.72 | -15,002.45 | 1,596.58 | 8,851.16 |

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

Mortgage Proof of Claim

REPRESENTATION OF PRINTED DOCUMENT



**Annual Escrow Account
Disclosure Statement**

P.O. Box 619063, Dallas, TX 75261-9063
DO NOT SEND MAIL TO THIS ADDRESS.

Page 1 of 4
WILLIAM SPENCE

WILLIAM SPENCE
410 SNOW FOX LN
EGG HARBOR TOWNSHIP NJ 08234-8014

**Please review – important information regarding your escrow account.**

Loan Number:

Property Address:
410  Snow Fox Ln
Egg Harbor Township, NJ 08234

Statement Date: 03/02/2023
New Payment Effective Date: 03/01/2023

Dear William Spence,

Your relationship is important to us and we appreciate the opportunity to service your home financing needs. This statement provides details on your escrow account history, as well as our projections for your property tax and homeowner's insurance obligations for the next 12 months.

Based on our review, there wasn't a shortage or surplus of funds in your escrow account. However, we need to adjust your account for future projected disbursements. **Your mortgage payment is changing — please see details below.**

### YOUR NEW PAYMENT

| Payment Information | Current Monthly Payment | Your New Monthly Payment beginning on 03/01/2023 |
|---|---|---|
| Principal & Interest: | $1,023.39 | $1,023.39 |
| Escrow Payment: | $1,173.54 | $1,170.32 |
| Escrow Shortage: | $36.23 | $0.00 |
| **Total Payment:** | **$2,233.16** | **$2,193.71** |

To help you better understand your statement, as well as escrow accounts in general, please review the enclosed "Helpful Information" page or visit mtb.com/escrow_faqs. If you have any other questions, please call us at 1 800 411 7627, Monday Friday, 8:30am 9:00pm ET, or write to us at M&T Bank, P.O. Box 1288, Buffalo, NY 14240.

Thank you for being our customer. We take great pride in being your mortgage partner.

**Quick and easy payment options:**

 **ONLINE** at mtb.com

 **CALL** 1-800-411-7627

 **STOP BY** any M&T branch

INTERNET REPRINT

THIS SECTION HAS BEEN INTENTIONALLY LEFT BLANK

# M&T Bank

## YOUR ACCOUNT HISTORY

Below are the previous escrow projections (including anticipated escrow activity that may occur before your New Payment Effective Date listed on page 1) and the actual escrow activity to date. Comparing the two can determine where a difference may have occurred.

### Activity Summary

| Month & Year | Projected Payment to Escrow | Actual Payment to Escrow | Description | Projected Disbursement | Actual Disbursement | Projected Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | Beginning Balance | | | $4,833.85 | -$12,326.02 |
| Jan 2023 | $1,173.54 | * | Risk Bsd FHA | $142.20 | * | $5,865.19 | -$12,326.02 |
| Jan 2023 | | | County Tax | $2,411.40 | $2,392.03 * | $3,453.79 | -$14,718.05 |
| Jan 2023 | | | Risk Bsd FHA | | $142.20 * | $3,453.79 | -$14,860.25 |
| Feb 2023 | $1,173.54 | * | Risk Bsd FHA | $142.20 | | $4,485.13 | -$14,860.25 |
| Feb 2023 | | | Risk Bsd FHA | | $142.20 * | $4,485.13 | -$15,002.45 |

**The total amount of escrow payments received during this period was $14,583.72 and the total escrow disbursements were $2,676.43.**

*Indicates a difference from a previous estimate either in the date or the amount of the deposit/disbursement.

Borrower Paid Mortgage Insurance Premium: Your mortgage loan requires a borrower paid mortgage insurance premium ("MIP"). MIP is insurance from the Federal Housing Administration ("FHA") that protects lenders against loss in the event a borrower defaults on a mortgage.

**Effective for all loans closed on or after January 1, 2001, FHA annual MIP will be automatically cancelled under the following conditions:**
**Loans with FHA case numbers assigned before June 3, 2013:**
- Mortgage loan terms greater than 15 years: the annual MIP will be cancelled when the loan to value ratio reaches 78%, provided the mortgagor has paid the annual mortgage insurance premium for at least five years.
- Mortgage loan terms less than or equal to 15 years with a loan to value ratio greater than 78%: the annual MIP will be cancelled when the loan to value ratio reaches 78%.

**FHA will determine when you have reached the 78% loan to value ratio based on the lower of the sales price or appraised value at origination.** New appraised values will not be considered. Cancellation of the annual mortgage insurance premium will normally be based on the scheduled amortization of the loan. However, in cases where additional payments have been applied to the loan balance as a prepayment, cancellation can be based on the actual amortization of the loan. If you have prepaid and believe you have met the requirements for cancelling the FHA insurance, please send a written request to us at P.O. Box 1288, Buffalo, NY 14240.

**Loans with FHA case numbers assigned on or after June 3, 2013:**
- Mortgage loan terms greater than 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
- Mortgage loan terms greater than 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.
- Mortgage loan terms less than or equal to 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
- Mortgage loan terms less than or equal to 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.

M&T Bank is attempting to collect a debt and any information obtained will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, M&T Bank retains rights under its security instrument, including the right to foreclose its lien.



WILLIAM SPENCE

Loan Number
Statement Date: 03/02/23

## PROJECTED ESCROW PAYMENTS OVER THE NEXT 12 MONTHS

### Anticipated Annual Disbursements

| | |
|---|---|
| Mortgage Ins: | $1,706.40 |
| County Tax: | $9,529.39 |
| Hazard Ins: | $2,808.00 |
| Total: | $14,043.79 |

As allowed by federal law (RESPA), our projections include an escrow reserve (or cushion) equal to two monthly escrow payments (excluding MIP/PMI), unless state law specifies a lower amount.

### Projected Escrow Balance Summary

M&T Bank expects to pay $14,043.79 over the next 12 months.

Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total taxes and insurance: | $14,043.79 |
| Divided by 12 monthly payments: | $1,170.32 |
| **New Monthly Escrow Payment:** | **$1,170.32** |

### Anticipated Activity Summary

Projections for the coming year: The following summary shows anticipated activity in your escrow account for the next 12 months, which was used to calculate your payment above.

| Month & Year | Monthly Escrow Payment | Amount Scheduled to be Paid | Description | Projection Based on Current Balance | Projection Based on Required Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | -$418.73 | $4,475.41 |
| Mar 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | $609.39 | $5,503.53 |
| Apr 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | $1,637.51 | $6,531.65 |
| Apr 2023 | | $2,392.03 | County Tax | -$754.52 | $4,139.62 |
| May 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | $273.60 | $5,167.74 |
| Jun 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | $1,301.72 | $6,195.86 |
| Jul 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | $2,329.84 | $7,223.98 |
| Jul 2023 | | $2,359.75 | County Tax | -$29.91 | $4,864.23 |
| **Jul 2023** | | **$2,808.00** | **Hazard Ins** | **-$2,837.91** | **$2,056.23** |
| Aug 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | -$1,809.79 | $3,084.35 |
| Sep 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | -$781.67 | $4,112.47 |
| Oct 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | $246.45 | $5,140.59 |
| Oct 2023 | | $2,385.58 | County Tax | -$2,139.13 | $2,755.01 |
| Nov 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | -$1,111.01 | $3,783.13 |
| Dec 2023 | $1,170.32 | $142.20 | Risk Bsd FHA | -$82.89 | $4,811.25 |
| Jan 2024 | $1,170.32 | $142.20 | Risk Bsd FHA | $945.23 | $5,839.37 |
| Jan 2024 | | $2,392.03 | County Tax | -$1,446.80 | $3,447.34 |
| Feb 2024 | $1,170.32 | $142.20 | Risk Bsd FHA | -$418.68 | $4,475.46 |

### Escrow Requirements, New Mortgage Payment and Anticipated Annual Disbursements:

| | |
|---|---|
| Projected Beginning Balance | -$418.73 |
| - Required Minimum Balance | $4,475.41 |
| **Surplus/Shortage** | **$0.00**\*\* |

Your lowest monthly escrow balance for the next 12 months should reach $2,056.23, which equals a reserve of two months' escrow payments. The expected amount in your escrow account after your Feb 2023 payment is -$418.73. Your starting balance according to this review should be $4,475.41. This means that your have neither a shortage or surplus.

\*\*This has been adjusted for the bankruptcy proof of claim.

REPRESENTATION OF PRINTED DOCUMENT
Exhibit - Proof of Claim Page 4 of 5

**M&T Bank**

THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK

# Helpful information about your mortgage escrow disclosure statement.

To help you better understand your statement, as well as escrow accounts in general, answers to some of the most frequently asked questions are listed below.

**Q** Why am I getting this statement?

**A** Mortgage lenders are required by regulations to perform an annual review of your account and provide a hard copy statement for your records.

**Q** How does an escrow account work?

**A** A mortgage escrow account allows you to pay ongoing property tax and homeowner's insurance costs within your monthly mortgage payments. These additional funds accumulate in your escrow account, managed by M&T, and we pay property taxes, homeowner's insurance and any mortgage insurance on your behalf when they are due.

**Q** How is my escrow payment determined?

**A** To determine the appropriate funds are collected for the escrow portion of your payment, we use the following calculation:

*12 months of anticipated escrow payments, accounting for any existing escrow balance*
**+** *escrow reserve*
**÷ 12**
—————————————————
**=** *monthly escrow payment*

The escrow reserve (or escrow cushion) is the amount of money collected to cover any unanticipated increases in your real estate tax or insurance premium payment. It acts as a buffer and helps to prevent your escrow account from being overdrawn. An escrow reserve exists on your account unless your mortgage documents or state law applies and is generally a two-month escrow payment.

**Q** What causes escrow payments to change from year to year?

**A** Your escrow payment may increase for several reasons. The most common reasons are:

• Increases in your property taxes, insurance premiums, or your property's tax assessment

• Changes in your insurance carrier or your tax due date

• Fewer deposits to escrow than expected

Even though taxes or insurance may go down from the previous year, it doesn't mean escrow payments will also decrease. Analysis calculations for tax and/or insurance are based on last amount(s) paid, or where applicable, from the prior servicer or from closing documents. If you have received more recently updated information from your tax assessor, please forward it to eta@mtb.com.

**TIP:** Municipalities offer a few common tax exemptions for disability, homestead, senior and veteran status. Check with your local tax office to see if you are eligible for these, or any other exemptions.

**Q** If there is an escrow shortage, what do I need to do?

**A** You are not required to pay the escrow shortage in full.

If you do not want to submit the full shortage amount, the escrow shortage will be spread equally over 12 months of payments and your new payment will be higher for the coming year.

If you choose to submit the full shortage amount (partial payments are not permitted), you have two payment options:

• **Online:** Log in to your M&T Online or Mobile Banking account, select your mortgage account and click the "View My Mortgage Info" button. At the top left of the next screen, select "Make A Payment." Your mortgage loan must be current to use this option.

• **By Mail:** Send a check, made payable to M&T Bank with "escrow shortage payment" and the loan number noted on the memo line, to: M&T Bank, Escrow Department, P.O. Box 64787, Baltimore, MD 21264-4787. If you are paying your escrow shortage, the funds will be applied immediately, however your mortgage statement may not reflect changes until the analysis effective date.

**PLEASE NOTE:** Paying the full shortage amount will adjust your account resulting in the smallest possible increase in your monthly mortgage payment amount. It's important to keep in mind that any increase in your real estate tax amounts and/or insurance premium(s) may cause your payment amount to change even if you pay your shortage amount.

**Q** Why do I have an escrow overage (surplus of funds) in my account?

**A** An overage occurs if the current funds and future payments to your escrow account are estimated to exceed the anticipated tax and insurance payments for the next 12 months (escrow analysis period). An overage may occur if taxes or insurance premiums were lower than estimated. When the escrow analysis is completed, the overage amount may be sent to you as a refund check. If the surplus is less than $50, it will be credited to your payment.

## Have additional questions? We're here to help.

Go to **mtb.com/escrow-faqs** for answers to other frequently asked questions.
Or call us at **1-800-411-7627** Monday – Friday, 8:30am – 9pm ET.

We appreciate your business. Thank you for giving us the opportunity to serve your financial needs.



Equal Housing Lender. ©2022 M&T Bank. Member FDIC. NMLS                    tb.com




**ORIGINAL**

# NOTE

APRIL 26, 2016                    Foothill Ranch                    CALIFORNIA
<br>[Date]                                [City]                              [State]

410 SNOW FOX LN, EGG HARBOR TOWNSHIP, NEW JERSEY 08234
<br>[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 237,278.00          (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is loanDepot.com, LLC,

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     3.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on       JUNE 1       , 2016          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal and other items in the order described in the Security Instrument before Principal. If, on       MAY 1, 2046       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 11733, Newark, New Jersey 07101-4733

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,049.00          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

---

MULTISTATE FHA FIXED RATE NOTE

DocMagic *eForms*
<br>www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000    % the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses .

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
WILLIAM SPENCE           -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

*[Sign Original Only]*

Loan Originator: YOUSUF SHAH, NMLSR ID ▮▮▮▮▮▮
Loan Originator Organization: LOANDEPOT.COM, LLC, NMLSR ID
▮▮▮▮▮▮

**PAY TO THE ORDER OF**
LAKEVIEW LOAN SERVICING, LLC
_____
**WITHOUT RECOURSE**
LOANDEPOT.COM, LLC

**Dan Binowitz**
SVP, Capital Markets

MULTISTATE FHA FIXED RATE NOTE

DocMagic *eForms*
www.docmagic.com

PAY TO THE ORDER OF

WITHOUT RECOURSE
LAKEVIEW LOAN SERVICING, LLC

Donna Gross, Vice President



Branch :FOL User :NJFO      Order: 348876ETS   Title Officer:   Comment:            Station Id :DJZ3

Case 2:23-14063-ABA   Doc 28-1   Filed 05/22/23   Entered 05/22/23 11:29:06   Desc
Exhibit - Proof of Claim 30    Page 21 of 44
Page 1 of 30



## Atlantic County
## Document Summary Sheet

| | Type | MODIFICATION OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | **Consideration** | | | | | |
| | **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | **Document Date** | 10/05/2021 | | | | |
| | **Reference Info** | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | | **Instrument No.** | **Recorded/File Date** |
| | | 14077 | 1 | | 2016033358 | |
| **MODIFICATION OF MORTGAGE** | **MORTGAGOR** | **Name** | | | **Address** | |
| | | WILLIAM SPENCE | | | | |
| | | SONTAY L SPENCE | | | | |
| | **MORTGAGEE** | **Name** | | | **Address** | |
| | | LAKEVIEW LOAN SERVICING LLC | | | | |
| | | MT BANK | | | | |
| | **Parcel Info** | | | | | |
| | **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | 05 | 5216 | 20 | | 05 |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ATLANTIC COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

After recording please return to:
**ServiceLink**
**Attn: Loan Modification Solutions**
**3220 El Camino Real**
**Irvine, CA 92602**

**Prepared by:**

**Desiree Schroeder**

**475 Crosspoint Pkwy**

**Getzville, NY 14068**

————————————————————*[Space Above This Line For Recording Data]*————————

**FHA/VA Case No.:**

**Investor Loan No:**

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **5th** day of **October, 2021**, between **WILLIAM SPENCE AND SONTAY L SPENCE, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY** ("Borrower") and **LAKEVIEW LOAN SERVICING, LLC BY IT'S ATTORNEY-IN-FACT M&T BANK** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **April 26, 2016**, in the amount of **$237,278.00** and recorded on **June 3, 2016** in Book, Volume, or Liber No. **14077**, at Page 1 (or as Instrument No. **2016033358**) , of the **Official** (Name of Records) Records of **Atlantic**, **NEW JERSEY** (County and State, or other jurisdiction) and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**410  SNOW FOX LN, EGG HARBOR TOWNSHIP, NJ 08234**
(Property Address)

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument                    **Form 3179 1/01 (rev. 4/14)**
The Compliance Source, Inc.                                    Page 1 of 7                                    **23703NJ 10/01 Rev. 03/17**
                                                                                        **©2001-2017, The Compliance Source, Inc.**

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **November 1, 2021**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$238,901.26**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.125%**, from **October 1, 2021**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,023.39**, beginning on the **1st** day of **November, 2021**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **3.125%** will remain in effect until principal and interest are paid in full. If on **October 1, 2051** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

**Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument**  
The Compliance Source, Inc.                         Page 2 of 7
Form 3179 1/01 (rev. 4/14)  
23703NJ 10/01 Rev. 03/17  
©2001-2017, The Compliance Source, Inc.

5.    Borrower understands and agrees that:

a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

---

**Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument**
The Compliance Source, Inc.                    Page 3 of 7

Form 3179 1/01 (rev. 4/14)
23703NJ 10/01 Rev. 03/17
©2001-2017, The Compliance Source, Inc.

█████████████████

6.     By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.     Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

Date: 10, 27, 21

Borrower - WILLIAM SPENCE

Date: 10, 27, 21

Borrower - SONTAY L. SPENCE *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt

## ACKNOWLEDGMENT

State of New Jersey                §
                                   §
County of Atlantic                 §

On this 27th day of October, 2021, before me Jennifer L. Rocco Notary Public, personally appeared **WILLIAM SPENCE AND SONTAY L. SPENCE**, known or identified to me (or satisfactorily proven), to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he (or they) executed the same as his own act for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

Signature of Officer

Jennifer L. Rocco
Printed Name

Clerk II
Title of Officer

(Seal)                    My Commission Expires:

JENNIFER L. ROCCO
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 50026726
MY COMMISSION EXPIRES NOV. 09, 2025

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
The Compliance Source, Inc.          Page 5 of 7          ©2001-2017, The Compliance Source, Inc.

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**LAKEVIEW LOAN SERVICING, LLC BY IT'S ATTORNEY-IN-FACT M&T BANK**

Tyler Allport
Banking Officer

By: _____
                -Lender

          10/29/2021
      Date of Lender's Signature

## ACKNOWLEDGMENT

State of NEW YORK      §
County of Erie           §
                      §

On October 29m 2021, before me _____Jennifer Meigs_____, Notary Public,
personally appeared, Tyler Allport and proved to my satisfaction that himself/herself was
the maker of the attached instrument and was authorized to and did execute the foregoing instrument as
BANKING OFFICER of **LAKEVIEW LOAN SERVICING, LLC BY IT'S ATTORNEY-IN-FACT M&T BANK**, and this instrument was executed as the act of the entity.

In witness whereof I hereunto set my hand and official seal.

JENNIFER MEIGS
NOTARY PUBLIC STATE OF NEW YORK
NIAGARA COUNTY
LIC. #01ME6419160
COMM. EXP. 06/28/2025

_____
Signature of Officer

_____
Printed Name

_____
Title of Officer

(Seal)                             My Commission Expires: _____

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument        Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.                     Page 6 of 7            23703NJ 10/01 Rev. 03/17
                                                        ©2001-2017, The Compliance Source, Inc.

**EXHIBIT A**

BORROWER(S): WILLIAM SPENCE AND SONTAY L SPENCE, HUSBAND AND WIFE AS TENANTS
BY THE ENTIRETY

LOAN NUMBER: ███████████

LEGAL DESCRIPTION:

STATE OF NEW JERSEY, COUNTY OF ATLANTIC, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND AND PREMISES LYING, BEING AND SITUATE
IN EGG HARBOR TOWNSHIP, ATLANTIC COUNTY, AND STATE OF NEW JERSEY BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS:  BEGINNING AT A POINT FOR CORNER AND IN THE
DIVISION LINE BETWEEN LOTS 19 AND 20, BLOCK 5216 IN THE SOUTHWESTERLY RIGHT OF
WAY LINE OF SNOW FOX ROAD (50.00 FEET WIDE); SAID BEGINNING POINT BEING NORTH 44
DEGREES 28 MINUTES 20 SECONDS WEST A DISTANCE OF 590.00 FEET FROM THE
NORTHWESTERLY TERMINUS OF A 15.00 FOOT RADIUS CURVE CONNECTING SAID
SOUTHWESTERLY RIGHT -OF -WAY LINE OF SNOW FOX ROAD AND THE NORTHWESTERLY
RIGHT -OF -WAY LINE OF TROTTER ROAD (50.00 FEET WIDE); SAID CONNECTING CURVE
SUBTENDING AN ANGLE OF 90 DEGREES 00 MINUTES 00 SECONDS WEST AN ARC DISTANCE OF
23.56 FEET WITH A CHORD BEARING OF NORTH 00 DEGREES 31 MINUTES 40 SECONDS EAST A
CHORD DISTANCE OF 21.21 FEET AS SHOWN ON FINAL PLAT HEREINAFTER  1. ALONG SAID
DIVISION LINE BETWEEN LOTS 19 AND 20, BLOCK 5216 SOUTH 45 DEGREES 31 MINUTES 40
SECONDS WEST A DISTANCE OF 105.00 FEET TO A POINT FOR A CORNER OF LOTS 19 AND 20,
BLOCK 5216 AND IN THE DIVISION LINE BETWEEN LOTS 58 AND 20, BLOCK 5216 AS SHOWN ON
FINAL PLAT HEREINAFTER REFERENCED; THENCE  2. PARTIALLY ALONG SAID DIVISION LINE
BETWEEN LOTS 8 AND 20, BLOCK 5216 AND PARTIALLY ALONG THE DIVISION LINE BETWEEN
LOTS 7 AND 20, BLOCK 5216 NORTH 44 DEGREES 28 MINUTES 20 SECONDS WEST A TOTAL
DISTANCE OF 100.00FEET TO A POINT FOR CORNER OF LOTS 7, 20 AND 21, BLOCK 5216 AND IN
THE DIVISION LINE BETWEEN LOTS 20 AND 21, BLOCK 5216 AS SHOWN ON FINAL PLAT
HEREINAFTER REFERENCED; THENCE  3. ALONG SAID DIVISION LINE BETWEEN LOTS 20 AND
21, BLOCK 5216 NORTH 45 DEGREES 31 MINUTES 40 SECONDS EAST A DISTANCE OF 105.00 FEET
TO A POINT FOR CORNER OF LOTS 20 AND 21, BLOCK 5216 AND IN THE SOUTHWESTERLY
RIGHT -OF -WAY LINE OF SNOW FOX ROAD AS SHOWN ON FINAL PLAT HEREINAFTER
REFERENCED; THENCE  4. ALONG SAID RIGHT -OF -WAY LINE OF SNOW FOX ROAD SOUTH 44
DEGREES 28 MINUTES 20 SECONDS EAST A DISTANCE OF 100.00 FEET TO A POINT FOR CORNER
AND IN THE DIVISION LINE BETWEEN LOTS 19 AND 20, BLOCK 5216 AS SHOWN ON FINAL PLAT
HEREINAFTER REFERENCED; SAID POINT BEING THE POINT AND PLACE OF BEGINNING.
BEING KNOWN AS BLOCK 5216, LOT 20, AS SHOWN ON PLAN OF LOTS "FOX TRAIL RIDGE
MAJOR SUBDIVISION, SHEET 3" FILED 6/4/2003 AS MAP #3061660. TAX ID/APN#: 08-05216-0000-
00020

Parcel ID Number: ███████████
ALSO KNOWN AS: 410  SNOW FOX LN, EGG HARBOR TOWNSHIP, NJ 08234

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument                Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.                          Page 7 of 7                        23703NJ 10/01 Rev. 03/17
                                                                                       ©2001-2017, The Compliance Source, Inc.

ATLANTIC COUNTY, NJ
EDWARD P. McGETTIGAN, COUNTY CLERK
RCPT ‡ ▮▮▮▮▮ RECD BY Debbie
REC FEES $150.00
RECORDED 06/03/2016 03:28:33 PM
INST ‡ 2016033358 VOL 14077

Record & Return to:
Closing USA, LLC
903 Elmgrove Road
Rochester, NY 14624
Phone: (585) 454-1730
Loan Number: ▮▮▮▮▮

This Instrument Prepared By:
SCOTT CROTTY
Loandepot.com, LLC
26642 Towne Centre Drive
Foothill Ranch, CA 92610

———— [Space Above This Line For Recording Data] ————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated    APRIL 26, 2016    , together with all Riders to this document.

(B) "Borrower" is WILLIAM SPENCE AND SONTAY L. SPENCE, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is loanDepot.com, LLC

Lender is a                   LIMITED LIABILITY COMPANY                   organized and existing under the laws of                   DELAWARE                   .
Lender's address is 26642 Towne Centre Drive, Foothill Ranch, California 92610

(E) "Note" means the promissory note signed by Borrower and dated    APRIL 26, 2016    .
The Note states that Borrower owes Lender TWO HUNDRED THIRTY-SEVEN THOUSAND TWO HUNDRED SEVENTY-EIGHT AND 00/100          Dollars (U.S. $237,278.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      MAY 1, 2046      .

DocMagic eForms
www.docmagic.com

(F)   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G)   **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider

☐ Condominium Rider      ☐ Other(s) [specify]

(I)   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   **"Escrow Items"** means those items that are described in Section 3.

(M)   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(R)   **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| | | |
|---|---|---|
| COUNTY | of | ATLANTIC | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.:

which currently has the address of     410 SNOW FOX LN

                                                     [Street]

EGG HARBOR TOWNSHIP    , New Jersey        08234          ("Property Address"):
    [City]                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds

Page 3 of 12

until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

    First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    Third, to interest due under the Note;

    Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA,

(Page 6 of 14)

Case 2:11-cv-01463-ABA Claim 2811-1 Filed 05/12/23 Entered 05/12/23 11:19:05 Desc
Exhibit - Proof of Claim Page 33 of 44

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration

DocMagic *eForms*
www.docmagic.com

or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may

(Page 8 of 14)

Case 3:11-cv-14083-RBA Claim 2811 Filed 05/12/23 21:23 Entered 05/12/23 12:19:06 Document
Exhibit - Proof of Claim Page 35 of 44

attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through

DocMagic *eForms*
www.docmagic.com

that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

(Page 11 of 14)

Case 2:11-cv-01463-ABA Document 28-1 Filed 05/12/21 Entered 05/12/21 10:19:06 Desc
Exhibit - Proof Claim of 3 Page 38 of 44

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified**

(Page 12 of 14)

Case 23-14853-ABA Claim 28-1 Part 5 Filed 05/12/23 Entered 05/12/23 12:19:06 Documents
Exhibit - Proof of Claim Page 39 of 44

in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
WILLIAM SPENCE            -Borrower

_____ (Seal)
SONTAY L. SPENCE          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                          Witness:

Gary L Shoenske

(Page 13 of 14)

Case 23-14853-ABA Doc 2811 Filed 05/12/23 Entered 05/12/23 11:19:06 Desc Documents
Exhibit - Proof of Claim Page 40 of 44

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of New Jersey )
) ss
County of _____ ATLANTIC _____ )

On _APRIL 26, 2016_____ , before me, _Gary L. Shoemake_____ ,

a Notary Public in and for said county, personally appeared __WILLIAM SPENCE AND SONTAY L._

SPENCE

——————————————————————————————————————————————— ,

(names(s) of signer(s)/witness(es))

who has/have satisfactorily identified himself/herself/themselves as the signer(s)/witness(es) to the above referenced
document.

_Gary L. Shoemake_____     _4/26/2016_
Notary's Signature                    Date

Gary L Shoemake
NOTARY PUBLIC of NEW JERSEY
My Commission Expires
June 15, 2016

_Gary L. Shoemake_____
Notary's printed, typed or stamped name

My commission expires: _June 15, 2016_

(Seal, if any)

Loan Originator: YOUSUF SHAH, NMLSR ID
Loan Originator Organization: LOANDEPOT.COM, LLC, NMLSR ID

DocMagic eForms
www.docmagic.com

(Page 14 of 14)

Case 23-14853-ABA Doc 2811 Filed 05/12/23 Entered 05/12/23 12:19:06 Desc Documents
Exhibit - Proof Claim of 39 Page 41 of 44

## LEGAL DESCRIPTION

All that certain tract or parcel of land and premises lying, being and situate in Egg Harbor Township, Atlantic County, and State of New Jersey being more particularly described as follows:

BEGINNING at a point for corner and in the division line between Lots 19 and 20, Block 5216 in the southwesterly Right of Way Line of Snow Fox Road (50.00 feet wide); said beginning point being North 44 degrees 28 minutes 20 seconds West a distance of 590.00 feet from the northwesterly terminus of a 15.00 foot radius curve connecting said southwesterly Right-of-Way Line of Snow Fox Road and the northwesterly Right-of-Way Line of Trotter Road (50.00 feet wide); said connecting curve subtending an angle of 90 degrees 00 minutes 00 seconds West an arc distance of 23.56 feet with a chord bearing of North 00 degrees 31 minutes 40 seconds East a chord distance of 21.21 feet as shown on Final Plat hereinafter

1. Along said division line between Lots 19 and 20, Block 5216 South 45 degrees 31 minutes 40 seconds West a distance of 105.00 feet to a point for a corner of Lots 19 and 20, Block 5216 and in the division line between Lots 58 and 20, Block 5216 as shown on Final Plat hereinafter referenced; THENCE

2. Partially along said division line between Lots 8 and 20, Block 5216 and partially along the division line between Lots 7 and 20, Block 5216 North 44 degrees 28 minutes 20 seconds West a total distance of 100.00feet to a point for corner of Lots 7, 20 and 21, Block 5216 and in the division line between Lots 20 and 21, Block 5216 as shown on Final Plat hereinafter referenced; THENCE

3. Along said division line between Lots 20 and 21, Block 5216 North 45 degrees 31 minutes 40 seconds East a distance of 105.00 feet to a point for corner of Lots 20 and 21, Block 5216 and in the southwesterly Right-of-Way Line of Snow Fox Road as shown on Final Plat hereinafter referenced; THENCE

4. Along said Right-of-Way line of Snow Fox Road South 44 degrees 28 minutes 20 seconds East a distance of 100.00 feet to a point for corner and in the division line between Lots 19 and 20, Block 5216 as shown on Final Plat hereinafter referenced; said point being the point and place of BEGINNING.

Being known as Block 5216, Lot 20, as shown on Plan of Lots "Fox Trail Ridge Major Subdivision, Sheet 3" filed 6/4/2003 as Map #3061660.

Tax ID/APN#:

## Atlantic County
## Document Summary Sheet

ATLANTIC COUNTY CLERK

5901 MAIN ST

MAYS LANDING NJ 08330 1797

ATLANTIC COUNTY, NJ
EDWARD P. McGETTIGAN, COUNTY CLERK
RECORDED 01/05/2018 16:10:42
RCPT #          RECD BY E-RECORD
NAME FEE
RECORDING FEES 40.00
INSTRUMENT# 2018000753
VOL 14363 PAGE 1 OF 3
**Official Use Only**

| **Transaction Identification Number** | |
|---|---|
| **Submission Date**(mm/dd/yyyy) | 12/29/2017 |
| **No. of Pages** (excluding Summary Sheet) | 1 |
| **Recording Fee** (excluding transfer tax) | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |

**Return Address**   *(for recorded documents)*

M AND T BANK RETAIL
ONE FOUNTAIN PLAZA, 4TH FLOOR
BUFFALO, NY 14203

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**
ATLANTIC COUNTY

**Batch Type**   L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

**\* DO NOT REMOVE THIS PAGE.**
**COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ATLANTIC COUNTY FILING RECORD.**
**RETAIN THIS PAGE FOR FUTURE REFERENCE.**

**Atlantic County**
**Document Summary Sheet**

| | | |
|---|---|---|
| **Type** | ASSIGNMENT OF MORTGAGE | |
| **Consideration** | | |
| **Submitted By** | M AND T BANK RETAIL (CSC/INGEO SYSTEMS INC) | |
| **Document Date** | 12/26/2017 | |
| **Reference Info** | | |

| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
|---|---|---|---|---|---|
| | OR | 14077 | 1 | 2016093358 | |

| | **ASSIGNOR** | **Name** | | **Address** | |
|---|---|---|---|---|---|
| ASSIGNMENT OF MORTGAGE | | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | | | |
| | | LOANDEPOTCOM LLC | | | |
| | | WILLIAM SPENCE | | | |
| | | SONTAY L SPENCE | | | |

| | **ASSIGNEE** | **Name** | | **Address** | |
|---|---|---|---|---|---|
| | | LAKEVIEW LOAN SERVICING LLC | | | |

| **Parcel Info** | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*• DO NOT REMOVE THIS PAGE.*
**COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ATLANTIC COUNTY FILING RECORD.
RETAIN THIS PAGE FOR FUTURE REFERENCE.**

Page 2 of 2

Recording Requested By:
M&T BANK

When Recorded Return To:

M&T BANK
5TH FLOOR-ASSIGNMENTS
P.O. BOX 1950
BUFFALO, NY 14240

## CORPORATE ASSIGNMENT OF MORTGAGE

Date of Assignment: December 28th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LOANDEPOT.COM, LLC ITS SUCCESSORS AND ASSIGNS at PO BOX 2026, FLINT, MI 48501-2026
Assignee: LAKEVIEW LOAN SERVICING, LLC at 4425 PONCE DE LEON BLVD, CORAL GABLES, FL 33146

Executed By: WILLIAM SPENCE AND SONTAY L. SPENCE, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LOANDEPOT.COM, LLC ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 04/29/2016 Recorded: 06/03/2016 in Book/Reel/Liber: 14077 Page/Folio: 1 as Instrument No.: 2016033358 In the County of Atlantic, State of New Jersey.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $237,278.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LOANDEPOT.COM, LLC ITS SUCCESSORS AND ASSIGNS
On December 28th, 2017

By: _____
Joshua E Wismen, Assistant
Secretary

STATE OF New York
COUNTY OF Erie

On the 28th day of December in the year 2017 before me, the undersigned Notary Public in and for said State, personally appeared Joshua E Wismen, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR LOANDEPOT.COM, LLC ITS SUCCESSORS AND ASSIGNS , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DANIEL JAQUES
Notary Expires: 08/24/2019 #01JA6329365
Qualified in Erie County

Daniel Jaques
Notary Public, State of New York
Qualified in Erie County
Reg # 01JA6329365
My Commission Expires: 08/24/2019

(This area for notarial seal)

INSTRUMENT # 2018000753 E-RECORD PAGE 3 OF 3